King vs. The State.

No. 48.—BRYANT KING, plaintiff in error, *vs.* THE STATE OF
GEORGIA, defendant in error.

[1.] No error in the ruling of the Court, that the prisoner should first answer, whether he was ready for trial.

[2.] The questions prescribed by the statute to try the competency of jurors to try a particular case, are the only questions proper to be asked them, but those questions may be so varied in form as to enable jurors properly to understand them.

[3.] On indictments for assault with intent to murder, in order to enable the jury to judge of the intent, the effects of the blow inflicted may be given in evidence.

[4.] It is too late to object to the reading to the jury the evidence of a witness taken on a criminal trial, after it has been read without objection.

[5.] If it does not appear that a question was proposed to a witness and refused by the Court, it cannot be heard on a motion for a new trial in this Court.

[6.] The charge of the Court to the jury, must be considered in reference to the evidence given on the trial, and if the evidence justify it, the charge will be sustained.

Two persons charged in one indictment with assault with intent to murder, both using weapons which may produce death, it is no error for the Court to charge the jury, on the trial of one of them, that if the prisoner was present, participating in the affray and attempting to strike, or inflict a blow, whether he struck a blow or not, he was equally guilty with the person who struck the blow.

[7.] Verdict of the jury finding prisoner guilty, where two persons embraced in the same indictment are charged with assault with intent to murder, and the circumstances of the case as proved on the trial, show that if death had ensued, the killing would have been murder, will be supported as warranted by the evidence.

[8.] A witness is not entitled to a continuance on the ground of surprise, who neglects to procure witnesses whom he knows to have been present at the time the act was committed for which he was indicted.

Indictment for assault with intent to murder, in Randolph Superior Court. Tried before Judge KIDDOO, December, 1856.

The plaintiff in error, Bryant King, was indicted in the Superior Court of Randolph county, for an assault with intent to murder. The case being called, the presiding Judge required the prisoner to announce whether he was ready for trial, before the State announced, to which prisoner's counsel excepted.

The Court further decided that the questions to be propounded to the jurors on their *voir dire*, should be those contained in the act of the Legislature, passed on the 28th day of February, 1856 ; although the crime for which prisoner was about to be tried, was alleged to have been committed

in December, 1854, and prior to the passage of that act, to which decision prisoner's counsel excepted.

When the first jury was put on triors, the Court decided that no questions should be asked but those contained in the statute, although prisoner's counsel proposed to prove by the juror himself, that he had both formed and expressed an opinion in the case; to which decision prisoner's counsel excepted.

At the request of the Solicitor General, the Court allowed the evidence of James Suggs, the prosecutor, to be read over in the presence and hearing of the jury, to which defendant by his counsel excepted, not making any objection before it was read.

After the evidence, both on the part of the State and prisoner, had closed, the presiding Judge charged the jury, that if the prisoner was present at the time the injury was inflicted on Suggs, participating in the affray and *attempting* to strike him, whether he struck him or not, he was equally guilty with the person who inflicted the blows.

The jury found the prisoner guilty and the Court sentenced him to five years imprisonment in the Penitentiary.

And defendant moved for a new trial on the following grounds, to-wit.:

1st. Because the Court erred in requiring the prisoner to announce whether he was ready for trial, before the State had announced ready.

2d. Because the Court erred in deciding that the questions to be propounded to the jurors on their *voir dire*, should be those contained in the Act of 1856, when the crime was charged to have been committed in 1854.

3d. Because the Court erred in refusing to allow the jurors put on triors, to be asked any other questions than those contained in the statute; when prisoner's counsel proposed to prove by the first juror put on triors, that he had both formed and expressed an opinion in the case.

4th. Because the Court erred in allowing the Solicitor

General to prove the effects of the blow stricken, and the length of time prosecutor was confined from it.

5th. Because the Court erred in permitting the testimony of Suggs, at the request of the Solicitor General, to be read over in the presence and hearing of the jury.

6th. Because the Court erred in refusing to allow the prosecutor to be asked "If he did not tell Early Varner at Brooks' Hotel in Cuthbert, in July 1856, that he only wished to make defendant run away, for he did not believe he could hurt him," counsel stating that their object was to impeach the witness.

7th. Because the Court erred in charging the jury, that if the prisoner was present when the injury was inflicted upon Suggs, and participating in the affray, and attempting to strike or inflict a blow, whether he struck a blow or not, he was equally guilty with the person who did strike.

8th. Because the finding of the jury was contrary to law and evidence.

9th. Because the sentence of five years imprisonment in the Penitentiary was excessive and illegal.

10th. Because the prisoner was surprised by the testimony of James Suggs, as will appear by reference to his affidavit, hereto annexed.

The following is the affidavit referred to.

GEORGIA,      } Before me  personally came Bryant
RANDOLPH COUNTY. } King, who on  oath, says, that he was not in the house of James Suggs, at the time the offence was committed as alleged in the above stated case.   That he can prove both by Henry King and Melvin Barton, that he was not in Suggs' house at the time, and that deponent had no hand in the difficulty, and that he would not have announced ready for trial in the absence of both Henry King and Melvin Barton, if he had had any idea that Suggs would

King vs. The State.

have sworn that he deponent was present at the time the difficulty occurred, or that he had any hand in it.

his

BRYANT ⋈ KING.

mark.

Sworn to and subscribed before me, Dec., 1856.

SAMUEL C. SCOTT, J. P.

The Court refused the motion for a new trial, and prisoner by his counsel excepts and assigns error.

TUCKER & BEALL, for plaintiff in error.

Sol. Genl. HARRELL, for State, defendant in error

*By the Court.*—McDONALD, J. delivering the opinion.

The only error assigned in the record is, that the Court erred in overruling the motion for a new trial, and refusing to set aside the verdict of the jury. The new trial was moved for on ten grounds as will be seen in the foregoing statement. The second ground was abandoned on the argument, as having been already decided by this Court.

[1.] We see no reason for changing the rule which requires the defendant in criminal cases to announce first, whether he is ready for trial. In England, when the prosecution is in the Court of Kings Bench, the defendant cannot compel a trial. The Attorney General has an absolute control in such cases; and when the trial is at *nisi prius*, and the prosecution is in the King's name, the warrant of the Attorney General is necessary for a trial. In all such cases, the accused is compelled to await the pleasure of the Government officer. The hardship of this tyrannical rule has been mitigated, indeed abolished in this State by the penal code of 1833, which makes all indictments triable at the Term of the Court at which they are found. *Cobb* 835.

A person indicted for offences not affecting life, may de-

mand a trial, and if not tried at the term of the Court at which the demand was made, or at the next succeeding term, if at both terms there were juries impaneled and qualified to try him, he shall be discharged and acquitted of the offence charged in the indictment. The Act of 1852, *Pamp.* 242, places criminal cases, in regard to the opening and conclusion of the argument, on the footing of civil cases. These acts do not control the Court, nor were they intended to do it, in the matter which is made the ground of complaint in this assignment of errors; we will not disturb the judgment of the Court therein.

[2.] There was no error in the third assignment. The Court may vary, or allow to be varied in form, so as to enable the jury properly to understand them, the questions directed by the statute to be propounded to them to ascertain their competency to try the cause. If the juror had answered the question proposed in the affirmative, it would not have disqualified him. He must have gone to the extent declared in the act.

[3.] The indictment is for assault with intent to murder. The extent of the wound and the nature of it, inflicted on the person on whom the assault was made, when there was one, is always involved in the issue. It has much to do with proving the intent of the assailant. The prosecutor was struck with a gun, and although the prisoner did not inflict the blow, he was present aiding and abetting, attempting to inflict wounds with a knife at the same time. The united acts were evidence of a common intent, and the effects of the blow given ought to have been submitted to the consideration of the jury.

[4.] There was no objection made by prisoner's counsel to the reading of the witness Suggs' evidence in the presence and hearing of the jury until after it was read. The objection, if good at any time, came too late.

[5.] There is nothing in the record to sustain the sixth ground in the motion for a new trial. It does not appear that any such question was propounded to the witness.

[6.] The charge of the Court was given in reference to the evidence submitted to the jury. The prisoner was using a knife and attempting to cut or stab the prosecutor at the time the latter received the blow. In fact, he was defending himself against the knife when he was knocked down. Other parts of the evidence, to which reference will presently be made, might have some influence in support of the charge given by the Court. There was evidence justifying the charge.

[7.] The verdict of the jury is fully sustained by the evidence. All the circumstances given in evidence show that the prisoner and his brother who gave the blow, had a common intent to murder or inflict other violent personal injury upon the prosecutor, and that the jury had a right to infer and find a murderous intent. They, in company with another person, went to the house of the prosecutor near sunset, on the evening the offence was committed. They told him they had shot one of his hogs, and asked him if he was mad because they had killed his hog. They asked him to go and see it, which he declined to do, but sent negroes, who he said could bring it in and it could be used. Two negroes went with them, who came running back. Soon after, the prisoner having a knife, and his brother a gun, jumped into the door. The fight immediately commenced, "Henry King made at the prosecutor," who attempted to drive him out of the house. While engaged in a scuffle with Henry King, the prisoner felt something ripping behind him, looked around and saw prisoner behind him cutting away with a large knife. He cut his clothes and marked his skin in several places. As prosecutor turned to defend himself against prisoner, the blow was inflicted with the gun. We think the jury were warranted in finding a verdict of guilty.

The ninth ground of error is abandoned.

The surprise of the prisoner was not a legal surprise. He was indicted for assault with intent to murder. He knew that the prosecutor would be a witness; he knew that other persons, witnesses to the transaction, were absent, and that the persons whom he alleges would testify to statements of the prosecutor which would discredit him, if he testified to the facts in the record to criminate him, and it does not appear that he used any diligence to procure their evidence. Parties must prepare for their defence, and knowing the truth of their side of the case must prepare to prove and sustain it. The witnesses by whom he expected to prove his innocence, are those who witnessed the whole difficulty, and it does not appear that he made an effort to procure their attendance.

Judgment affirmed.