SIMMONS *et al. vs.* THE STATE OF GEORGIA.

1. The proper practice stated as to objecting to jurors for cause, when presented; as to putting them on their *voire dire*, and upon the judge as trior; and as to the introduction of testimony to show disqualification.

2. Where a person having money in a satchel went into a banking house, and temporarily deposited it upon the counter, and while standing within about two feet of it, one of two persons called his attention and the other abstracted money from the satchel, the offense was larceny from the house, although the satchel was neither the property of the owners or occupiers of the building, nor was under their custody.

December 2, 1884.

Jurors. Practice in Superior Court. Criminal Law. Larceny. Before Judge RONEY. Richmond Superior Court. April Term, 1884.

Reported in the decision.

M. P. CARROLL; TWIGGS & VERDERY, for plaintiffs in error.

BOYKIN WRIGHT, solicitor general, by H. C. FOSTER, for the state.

HALL, Justice.

Two only of the numerous questions made by the motion for a new trial were insisted on in argument here, the others being properly abandoned as having neither force nor merit. The first that occurs in the progress of

the trial, and which we will first notice, is that raised by the 3d and 4th grounds of the motion for a new trial, which are in the following words:

(3.) "Because the court, when the second juror was called, and before the questions upon the *voire dire* had been propounded, counsel for defendant proposed to put the juror on triors as to his competency, and counsel proposed that the court as a trior propound, or allow counsel to propound, the following questions to the juror: 1st. Has your judgment been formed or made up as to either of the prisoners at the bar, from either the statement of persons who were present or from rumors, reports or newspaper publications? 2d. Have you any prejudice or bias resting on your mind as to either of the prisoners at the bar, from either the statement of those who were present or from rumors, reports or newspaper publications? The court refused to allow counsel to propound these questions, or to propound them itself as trior, and held that no questions save those on the *voire dire* could be asked, unless evidence was first produced by witness to show that the juror was incompetent."

(4.) Because the court erred, after having refused to allow the juror or any other juror to be put on triors, as above set forth in the 3d ground, counsel for defendants then asked the court to instruct the panel that, if their judgment in this case had been formed or made up as to either of the prisoners at the bar, from either the statements of persons who were present, or from rumors, reports or newspaper publications, that then that constitutes such bias or prejudice as the law means. The court, upon the above request being made, refused to propound the question or so instruct the panel, replying, "I shall not propound anything of the kind."

1. The practice sought to be introduced by this proposed method is certainly new to our courts, is unauthorized by any law with which we are acquainted, and would, if allowed, result, as we think, in great delay, and tend to

the serious hinderance of justice.    Juries, under our system, are required to be composed of "intelligent and upright men," and even the "most experienced, intelligent and upright men," who are selected to serve on grand juries, are made competent to serve as traverse jurors in all cases.    Code, §5175.    When and as each juror is presented to the accused, in such manner that he can "distinctly see him," he may then object to him, either because he is a citizen of a different county, or that he is over sixty or under twenty-one years of age, or that he is an idiot, lunatic or intoxicated, or that he is so near of kindred to the prosecutor, or the accused, and in cases of homicide, to the deceased, as to disqualify him by law from serving on the jury.    Upon making either of these objections, it is the duty of the court to hear immediately such evidence as may be submitted (*the juror being a competent witness*) in relation to the truth of these objections, and if he shall be satisfied of the truth of either, the juror shall be set aside for cause.    Code, §4681.    At this stage of the trial, these are the only objections which will avail to set aside the juror for cause, and these are the only cases in which the juror is expressly declared a competent witness as to his own qualifications.    Other disqualifications are ascertained by his examination on the *voire dire*, and if he answers the questions prescribed by the statute in such manner as to render him competent, then this is not conclusive of that fact, but either party, the state or accused, has the right to introduce evidence before the judge to show that the juror's answers or any of them are untrue, and it is made the duty of the judge to determine upon the truth of such answers as may be thus questioned before the court.    Code, §4682.    The juror cannot be made to impeach his own answers; he is not declared in this, as in the former class of objections, a competent witness for this purpose, and upon principle he should not be compelled to answer questions tending to inculpate him; *nemo tenetur seipsum prodere* is announced in *Magna*

*Charta* as a fundamental principle indispensable to the protection of life and liberty. We have always extended the benefit of this principle to witnesses in whose behalf it has been invoked, whether they were suitors or jurors.

In *Bishop's* case, 9 *Ga.*, 124, 127, where the juror had answered the statutory questions so as to render him competent, it was said that, "notwithstanding his answer, the state or prisoner either had the right to put such juror upon his trial in the manner pointed out by the common law, and to prove such juror incompetent; but this must be done, we apprehend, by *aliunde* testimony. We would not be understood as denying the right of the triors to interrogate the juror." In *Pines's* case, 21 *Ga.*, 227, 236, 237, it was held, under the act now under consideration, that the defendant had no right to ask the jurors any other than the questions prescribed by the act. Lumpkin, J., delivering the opinion, added, "It is true that the further statements of the juror himself might be called 'evidence' in the language of the statute. But why limit the questions to four, if twenty may be asked? And then the words of the act are, 'shall have the right to introduce evidence,' rather intimating that the proof must come from some other source than the juror himself. We would not say that the court might not, *sua sponte*, further interrogate the juror. We only intend to negative the right of the party to do this." To the same effect are cases in 32 *Id.*, 672; 64 *Id.*, 375, 404; 65 *Id.*, 94. We do not intend to intimate an opinion, where it is apparent that the juror does not understand the questions, the judge or the counsel for either party may not be permitted to offer such explanation as will enable him to comprehend them. In *King's* case, 21 *Ga.*, 220, 225, it was held, that while the questions prescribed by the statute to test the competency of jurors to try a particular case, were the only proper questions to be asked them, yet that those questions might be so varied in form as to enable the jurors properly to understand them. We hold in this case, however, that the questions which

Simmons *et al. vs.* The State of Georgia.

the defendants' counsel requested the court to propound to the jurors, were, especially at the time the request was made, in direct contravention of the statute, and that if the court had permitted them to be propounded, he would have disregarded the object the legislature had in view in prescribing the questions set forth in the statute to ascertain the qualifications of jurors to try the case.   The questions proposed were directly repugnant, not only of the words, but to the manifest intention of the general assembly, as expressed in this act, and were therefore not only properly but necessarily disallowed.   Reason, authority and sound public policy unite in leaving it discretionary with the presiding judge, when acting as trior, to allow other than the questions prescribed by statute, to be propounded to jurors in order to ascertain their competency to pass upon the rights of parties, and where it is clear, either that no case exists for the exercise of such discretion, as in this case, or where there are circumstances to justify its exercise, unless it has been grossly abused, we will and cannot interfere to control it.   We have endeavored, in the present instance, to show that the facts did not authorize an appeal to the discretion of the court, and if the judge had undertaken to exercise such a discretion, he would have done it directly in the face of the statute.   He had no authority to substitute for the questions directed by the statute other and entirely different, if not conflicting, questions; and in declining to do this, he simply performed his duty.

No reason is shown why the panel should have been given the instructions requested in the 4th ground of the motion for a new trial.   Nothing was shown to justify the assumption which this request seems to imply, that it was composed of other than upright and intelligent men, who would truthfully and understandingly respond to the questions propounded to ascertain their fitness to try the case.

2.  While it is admitted that the defendants were shown

by the proofs to have committed simple theft or larceny, or perhaps larceny from the person, yet it is contended, with signal ingenuity and marked ability, that they could not be convicted, under the law and evidence, of larceny from the house, the offense for which they were indicted. The satchel from which the money was stolen was temporarily deposited upon the counter of a banking house, in the city of Augusta, about two feet from where its custodian was standing. The money did not belong to that bank, but to another in the same city; the person having charge of it had visited the house in which it was stolen for the purpose of having a check cashed; while standing at the counter on which this satchel was placed, his attention was diverted from it by one of the defendants, when the other abstracted from the bag $2,500, when both immediately left the house with their booty. It is insisted that these facts do not make out the crime of larceny from the house, because the satchel was not under the protection of the building; that it was neither the property of the owners and occupiers of the same nor was it deposited there for safe keeping, but there casually, and, as it were, *in transitu,* and that the theft was committed in the immediate presence of the party having rightful charge of the money. These circumstances, it is urged, distinguish this from the offense charged, and quite a number of cases have been produced and relied on to show that, under the English statutes and the statutes of some of our sister states, it could not be larceny from the house.

We need not stop to inquire whether the cases relied on justify the conclusion sought to be drawn from them, as we are satisfied that, under our own Code, the indictment and conviction were proper. If a party break or enter any house with the intent to steal, or after breaking or entering the same, does steal therefrom any money, goods, etc. (Code, §4413), or if by day or night any person shall in any building privately steal any money, etc. (*Id.,* §4414), or if such per-

son shall enter a house with intent to steal, but is detected and prevented from effecting his intention (*Id.*, §4415), or if he shall break a house with like intent, but is prevented, etc. (*Id.*, §4416), or if he shall both break and enter, or break or enter, with like intent, but is detected and prevented (*Id.*, §4417), in each of these cases he is guilty of the offense of larceny from the house, as was expressly held by this court in *Jenkins's* case, 50 *Ga.*, 260. The offense, as in this instance, is consummated, if the money, goods, etc., be privately stolen in any of the houses or buildings enumerated in §4414 of the Code. *Middleton's* case, 53 *Ga.*, 249. The Code does not make either the ownership of the property stolen or its custody by the occupant or proprietor of the building, or the presence or absence of the owner at the time of the theft, an essential ingredient in this offense, and were we to engraft upon it any such conditions, we should be legislating rather than construing or interpreting what the legislature has done. The *situs* of the property in a house or building of the character specified in the Code, when connected with other facts, constituting larceny as defined by the several statutes, is the additional fact essential to constitute the crime of larceny from the house. This is not an offense against the habitation, but is an offense against the property, as contradistinguished from the building. This distinction is recognized by the penal code. Crimes against the "habitation" consist of arson and burglary; those against the property consist of robbery and the various species of larceny, etc. They are arranged under the same part and title, but under different divisions of the Code; the former is treated of under Division V, and the latter under Division VI of Part IV and Title I of the Code.

In *Williams's* case, 46 *Ga.*, 217, this distinction is made clear, where it is said by Warner, J., "Burglary is an offense against the habitations of persons. Larceny from the house is an offense relative to property;" and this distinction exists "for the simple reason that the law so de-

clares." That the owner or custodian of the property being present in the house when it is stolen is an immaterial circumstance in the commission of the offense, is evident from the fact that the crime is complete if the defendant is detected and prevented from carrying his intention into effect. *Id.*, §217, 218.

In a case of burglary, 48 *Ga.*, 505, arising under the act declaring that the offense might be committed " in a house which was the place of business of another, where valuable goods, wares or produce or other articles of value were contained or stored," it was held that, in order to sustain the charge, it was not necessary to prove that the house broken into and entered was the place of business used for the purpose of containing or storing the goods alleged to have been stolen; that if the goods were in fact contained or stored in such a house at the time, it was sufficient to support the indictment, and this, although the business carried on in the house, was not carried on with or in the articles or goods stolen.

A more flagrant case than that under consideration, or one more satisfactorily established by the proofs, to the exclusion of all doubt as to the guilt of the parties accused, has been rarely presented; and that a jury of the vicinage, composed of " upright and intelligent men," should have been willing by their verdict to ask the mercy of the court in inflicting punishment upon an organized band of thieves, who came from a distant state for the purpose of preying upon the property and violating the right of their fellow citizens, is no slight tribute to the persuasive powers, the skill and eloquence of the able counsel who conducted their defence. In concluding this opinion, it is only proper to acknowledge the obligations we are under to H. Clay Foster, Esq., for the copious and admirably arranged brief furnished for the state.

Judgment affirmed.