(No. 16551.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL MAKOVICKI, Plaintiff in Error.

*Opinion filed April 24, 1925.*

1. CRIMINAL LAW—*what is gist of offense of assault with intent to rape.* In a prosecution for assault with intent to rape the specific intent charged is the gist of the offense, and the proof must show such an assault that if the purpose were accomplished the crime would be rape.

2. SAME—*the intent to commit rape may be proved by circumstances of assault.* In a prosecution for assault with intent to commit rape the intent with which the act was done is a question of fact, which may be proved by the character, manner and circumstances of the assault as well as by the declarations of the assailant.

3. SAME—*giving several instructions defining reasonable doubt is not approved practice.* The giving of several instructions defining the term "reasonable doubt" is not approved practice but is not such error as requires a reversal of a judgment of conviction where the guilt of the defendant is clearly established by the evidence.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

O'BRIEN, PRYSTALSKI & OWEN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of assault with intent to rape. He prosecutes this writ of error to reverse the judgment on the ground that the evidence does not show, beyond a reasonable doubt, that he entertained the intent to commit

rape at the time he made the assault, and that the court erred in giving too many instructions defining reasonable doubt.

Plaintiff in error came to the door of the apartment building at 2426 South Troy street, Chicago, and inquired about the renting of an apartment. The landlady was not at home at the time he called and he talked with Tillie Rada, a girl who roomed in the building. She told him that he would have to see the landlady and that she would not be home for two hours. He left the building, was gone about ten minutes and then again appeared at the door. He asked Miss Rada to see the landlady, and she told him that she had informed him ten minutes before that the landlady would not return for two hours and that he had better come again the next day. After some further conversation he told her that he had walked a long distance, that he was not feeling well and that he would like to have a drink of water. She unhooked the screen door and permitted him to step into the kitchen to get a drink. After he had drunk the water he expressed a desire to look through the apartment, but Miss Rada refused to show him through and told him he would have to come back when the landlady was at home. At this he seized her and started to carry her toward the bed-room. She struggled with him and they fell to the floor. There they fought for a time and then he finally pulled her into the bed-room. He tried to get her onto the bed, but she continued to struggle and they fell on the floor of the bed-room. She screamed for help and he put his hand over her mouth to stifle her cries. She bit his finger, and after some further struggle he left her and ran out of the house. She raised a window and shouted to the neighbors to catch the man. Several of them saw him running across lots in his effort to get away, and a store-keeper down the street caught him and brought him back to the apartment building. Miss Rada immediately identified him as the man who had assaulted her. One of his

fingers was bleeding, and he accounted for its condition by
stating that Miss Rada had slammed the door in his face
and his finger was caught in the door. Several witnesses
testified that her face was scratched, her lips swollen and
her arms bruised, that her hair was disheveled and her
clothing was disarranged and torn. The small rugs in the
kitchen and the bed-room were disarranged and pushed into
a pile.

In prosecutions of this character the specific intent
charged is the gist of the offense, and the proof must show
such an assault that if the purpose were accomplished the
crime would be rape. It does not follow, however, that an
express intention need be proved. The intent may be in-
ferred from the acts of the person charged with the crime
as well as by his words. The intent with which the act was
done is a question of fact, to be determined in the first in-
stance by the jury from the declarations of the assailant or
from the character, manner and circumstances of the as-
sault. (*Crosby* v. *People,* 137 Ill. 325; *Fitzpatrick* v. *Peo-
ple,* 98 id. 269.) The fact that plaintiff in error returned
to the apartment within ten minutes after he had been told
that the landlady would not be there for two hours, the
fact that he induced Miss Rada to permit him to enter the
apartment by deceit, and the manner, time and place of the
assault, were all elements to be considered by the jury in
arriving at a conclusion as to the intention with which the
assault was made upon the prosecutrix. Considering to-
gether all the circumstances proven, the evidence fully war-
rants the verdict of the jury. (*Lathrop* v. *People,* 197 Ill.
169.) There is nothing in the facts in this case that in-
dicates acquiescence in the indecent conduct shown by the
record in *Newman* v. *People,* 223 Ill. 324, and *Franey* v.
*People,* 210 id. 206.

The court gave in this case three instructions defining
reasonable doubt. While we have repeatedly criticised the
practice of over-emphasizing the term "reasonable doubt"

by giving several instructions defining it, we have not in any case, where the evidence was clear as it is in this case, deemed the error one of sufficient importance to require a reversal of the judgment. *People* v. *Heard,* 305 Ill. 319; *People* v. *Miller,* 292 id. 318.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*