The Chicago and Eastern Illinois Railroad Co. *et al.*

*v.*

Apollonia Schmitz.

*Opinion filed October 24, 1904.*

1. Negligence—*whether failure to look and listen is negligence is a question of fact.* Whether plaintiff's failure to look and listen before crossing railroad tracks is negligence or whether it is excused by the circumstances are questions of fact for the jury.

2. Same—*whether plaintiff was justified in attempting to cross track is for the jury.* Where the evidence tends to show an implied invitation to cross railroad tracks, arising from the raising of the gates after the passage of a train, the question whether plaintiff was justified in attempting to cross and took proper pains to look for other trains is a question of fact for the jury.

3. Appeals and Errors—*when question of sufficiency of the evidence cannot be reviewed.* The question of the sufficiency of the evidence to sustain the verdict of the jury in a suit at law cannot be reviewed, even by a court having jurisdiction of that question, unless the bill of exceptions shows that a motion for new trial was made and overruled and an exception taken.

4. Evidence—*what not proper to discredit testimony of a physician.* Where a physician testifies for the plaintiff in a personal injury case it is not proper, on cross-examination, to ask questions in regard to professional opinions he has given in other personal injury suits, nor to attempt to show, by direct examination of other witnesses, that he was interested, as a medical man, in a large number of personal injury suits against corporations.

5. Same—*when refusal to exclude evidence is proper.* Refusal to exclude evidence for the plaintiff, admitted without objection at

the time, is proper, where defendant has introduced testimony for the purpose of contradicting the evidence sought to be excluded.

6. RAILROADS—*both lessor and lessee are liable for negligent operation of railroad.* Both the owner of a railroad and the corporation or individuals which the owner authorizes to use the tracks are liable for an injury resulting from the negligent operation of the railroad.

7. SAME—*reputed ownership is sufficient in action for personal injury.* Formal proof of the ownership of a railroad is not necessary in an action for personal injury, in the absence of a denial of ownership by the pleadings or evidence contradicting the *prima facie* proof of ownership made by the plaintiff's witnesses in characterizing the tracks as those of the defendant company.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an appeal from a judgment of the Appellate Court, affirming a judgment of the superior court of Cook county against appellants.

The action, which was in case to recover damages for personal injuries sustained by appellee on September 26, 1900, was originally brought against the two appellant companies, the Chicago and Eastern Illinois Railroad Company and the Chicago and Western Indiana Railroad Company, and also the Chicago and Grand Trunk Railway Company and the Wabash Railroad Company. At the close of the plaintiff's case, peremptory instructions were given to find the Grand Trunk and the Wabash companies not guilty, and a verdict and judgment were entered accordingly. The case then proceeded to verdict and judgment for appellee against the two appellant companies.

There was no decision by the Appellate Court, as one of the justices had presided at the trial below and took no part in the proceedings, and the two remaining justices were unable to agree upon the case as presented for review, so that judgment was affirmed by operation of law.

The accident, which caused the injuries, happened in Chicago at a point where Twenty-fourth place, running east

and west between Twenty-fourth and Twenty-fifth streets, crosses eight railroad tracks running north and south. The easterly four of these tracks are the Pennsylvania or Fort Wayne tracks. The westerly four are the Chicago and Western Indiana Railroad Company's tracks. The two sets of tracks are separated by a space twelve or fifteen feet wide, and in this space was the tower house occupied by the operator of the crossing gates. On the night of the accident plaintiff left her house, which was about two and one-half blocks from the tracks, a little before eight o'clock, and was proceeding along the south sidewalk of Twenty-fourth place going west; she passed over four tracks of the Pennsylvania system, and approached near to the east track of the four tracks, controlled by the Western Indiana Railroad Company; she says that, when she came to the tracks, she looked north and saw nothing; she stopped and stood under the tower house while a freight train on the fourth or westerly track of the Western Indiana tracks passed to the south; she says that she heard the rattling of the engine of the freight train. According to her statement, when the last car of the freight train cleared the sidewalk, she saw the gate west and in front of her go up, and she moved forward; but, as she stepped upon the Western Indiana tracks, looking south, she saw the light of an engine and was struck, according to her statement, on the first track, that is, the easternmost track of the four Wabash railroad tracks, by a locomotive going north; the testimony of appellants tended to show that the locomotive, which struck the appellee, or plaintiff below, was a locomotive of the appellant, the Chicago and Eastern Illinois Railroad Company. After being struck, appellee was assisted by two men from the place of the accident to a church, to which she was on her way when she was struck, and after staying there a few minutes, until she recovered from a fainting spell, was assisted to her home by some women. She was confined to her bed about four months, and to her home about nine months. She was injured in her side, hip and shoulder, and has since been troubled with dizziness and vomiting spells,

and has been lame and obliged to use a crutch. She was at the time of the accident fifty-two years old, and weighed about one hundred and thirty-five pounds, and at the time of the trial weighed one hundred and twenty-one pounds.

The declaration consisted of one original, and two additional counts. The original count charges that the Western Indiana company was owning and controlling a certain right of way with a certain railway and certain tracks and gates and other appurtenances thereon across a certain public highway, to-wit, Twenty-fourth place, and that the Chicago and Eastern Illinois Railroad Company, Wabash Railroad Company, and Grand Trunk Railroad Company, by agreement with the Chicago and Western Indiana Railroad Company, were using said right of way, etc., and said defendants so carelessly, negligently and wrongfully operated and managed said railway and the gates and other appurtenances thereon, that, by and through the carelessness, negligence and wrongful conduct of the defendants, plaintiff was injured.

The first additional count charges that the Western Indiana Railroad Company "owned, controlled and operated a certain right of way," etc., with tracks and gates, and the defendants "used said right of way, tracks, etc., in pursuance of their business for the running of trains, etc., and that the defendants so carelessly, negligently, improperly and wrongfully ran, drove, operated, managed and controlled their said locomotives, engines, etc., that the plaintiff was injured."

The second additional count charges that the defendants controlled and operated a certain other right of way, and certain tracks and gates and appurtenances thereon, with a certain railway, and that said defendants "used said right of way, railway tracks and other appurtenances in the pursuance of their business of running trains, engines, etc.; that they so negligently, carelessly, etc., operated, managed and controlled their engines, that plaintiff was injured."

The plea was the general issue to the entire declaration. At the close of the plaintiff's case, and again at the close of all the evidence, each of the appellants requested the court to

211 – 29

give a peremptory instruction to the jury to find a verdict of not guilty. Such instructions were refused as to the present appellants, and exceptions were preserved. A special interrogatory, at the request of the appellants, was submitted to the jury, which was: "Could the plaintiff, by the exercise of ordinary care, have discovered the approach of the engine or train in time to have avoided the accident by the exercise of ordinary care on her part?" To this special interrogatory, the jury answered, "No."

Calhoun, Lyford & Sheean, for appellants.

Richolson & Levy, (C. Stuart Beattie, of counsel,) for appellee.

Mr. Justice Magruder delivered the opinion of the court:

*First*—Appellants contend that the peremptory instructions to find them not guilty should have been given, upon the alleged ground that the only conclusion to be drawn from the evidence is, that appellee was guilty of contributory negligence.

It will be noted that the contention of the appellants is, not that the evidence tends to show that appellee was guilty of contributory negligence, but that, as matter of fact, the appellee was guilty of contributory negligence. The objection, so made by counsel, seems to impose upon this court the task of passing upon the weight of the evidence. Such is not the province of this court in a case of this kind.

It cannot be denied, under the facts of this case, that there was evidence, tending to show that appellee was in the exercise of due care for her own safety, when she was injured, and that appellants were guilty of such negligence as caused the injury. Appellee says that, when advancing west on Twenty-fourth place towards the four easterly tracks of the Pennsylvania Company, the gate on Twenty-fourth place on the east side of those tracks was open, and, as it was open, she advanced through the gate across the four tracks

of the Pennsylvania Company to the space between them and the Western Indiana tracks where she took her stand under the tower house. The tracks in question ran north and south on Stewart avenue across a public highway, to-wit, Twenty-fourth place, and, therefore, if the eastern gate was up or raised, she was justified in advancing west upon the south sidewalk of Twenty-fourth place across the Pennsylvania tracks. The testimony of the appellants tends to show that the eastern gate was down, or closed, and that the appellee passed through the space between the end of the gate and the fence. Appellee is sustained in her statement, that the gates were up, by the testimony of another witness. But it was for the jury to say whether or not the eastern gate was raised, or whether it was closed.

While standing under the tower house in the space twelve feet wide between the Pennsylvania tracks on the east and the four Western Indiana tracks on the west, appellee saw a freight train pass south on the fourth or westernmost track of the Western Indiana Railroad Company's tracks. The bell of the freight train was ringing, and she heard it. As soon as this freight train passed across Twenty-fourth place to the south, she says that the western gate on the west side of the Western Indiana tracks was raised, and that, seeing the gate open, she started upon Twenty-fourth place to the west. As we understand the evidence, there is nothing to contradict her statement, that the gate on Twenty-fourth place, west of the Indiana tracks was thus raised, or open, when the freight train had passed. She says that, before she started west across the first or easternmost track of the Western Indiana tracks, she looked north and saw nothing, and that she was unable to see towards the south on account of a post which stood there, but that, as soon as she started across the first track, an engine, coming from the south towards the north, struck her, and, as she was struck, she saw its headlight.

The fact, that the gates on the west side of the Western Indiana tracks were raised after the passage of the freight

train to the south, operated as an invitation to her to proceed west. Whether she was justified in doing so, and whether she took proper pains to look north and south to see if any train was coming, were questions of fact to be submitted to the jury. "On a motion to take a case from the jury, either at the close of plaintiff's evidence, or at the close of all the evidence, the naked legal question thereby raised in this court is, whether or not there is any evidence in the record fairly tending to support the plaintiff's cause of action. It is never a question of the weight of the testimony." (*Chicago City Railway Co.* v. *Martensen,* 198 Ill. 511; *Chicago City Railway Co.* v. *Carroll,* 206 id. 318). It cannot be said that, in the case at bar, the evidence does not tend to show that the appellee was in the exercise of ordinary care for her own safety. In *Chicago and Alton Railroad Co.* v. *Pearson,* 184 Ill. 386, we said (p. 391) : "It is not a rule of law that the omission of the duty to look and listen will bar a recovery where there are facts excusing the performance of that duty, * * * and it is the settled rule of this court that it can not be said, as a matter of law, that a person is in fault in failing to look and listen if misled without his fault, or where the surroundings may excuse such failure." And it is a question for the jury to determine whether, in view of all the surroundings, the injured party is guilty of negligence in failing to look and listen, or whether he is relieved by the circumstances from the duty to look and listen. (*Chicago and Alton Railroad Co.* v. *Pearson, supra; Chicago City Railway Co.* v. *Fennimore,* 199 id. 9; *Chicago City Railway Co.* v. *Barker,* 209 id. 321).

There is also evidence, tending to show that the appellants were guilty of negligence, such as caused the injury to appellee. The engine or locomotive, which struck appellee, had the name of the Chicago and Eastern Illinois Railroad Company upon it, and was what is called a "dummy" engine, —a suburban engine, which had pulled a train into the Dearborn street station about that time of night, and was running back to the shop light. The evidence tends to show that it

was an empty engine without any cars behind it. The testimony of at least two witnesses of the appellants shows that, at the time of the accident, the engine was "backing up." There is some conflict in the evidence as to the direction in which this engine was moving, and as to the track it was moving on. Appellee's testimony tends to show that the locomotive, which struck her, was moving north on track No. 1, being the easternmost of the Western Indiana tracks, while the testimony of the appellants tends to show that the locomotive, which struck her, was going south, and was on track No. 2 of the Western Indiana tracks. The testimony of the appellee also tends to show that, whether this engine was moving north or south or on the first or on the second track, no bell was ringing, or whistle sounding, or other warning given of its approach. It was eight o'clock in the evening on September 26 when the accident occurred, and the night was an exceedingly windy one. The evidence of the appellants tends to show that the bell upon the engine was ringing. The witnesses of the respective parties also contradict each other as to the warning, given by the watchman in the tower house. The testimony of appellee tends to show that no bell was sounded from the tower house upon the approach of this empty engine, while the testimony of the watchman in the tower house is to the effect that he did give warning by the ringing of a bell.

A policeman, who, upon the night of the accident, had been detailed by the city authorities to investigate it, interviewed the watchman, who was in the tower house that evening, and makes the following statement in regard to his interview with the watchman: "He told me the gates were out of order and wouldn't work; told me it was a Chicago and Eastern Illinois engine going north on track 1; that he did not ring the bell on the tower house because he did not want to confuse her, but shouted at her; said she was standing almost under the tower; he showed me at that time where she was hit, and where she lay after she was hit; that was about twelve feet north of the south edge of the south

sidewalk on Twenty-fourth place, about four feet east of track 1; I was a policeman then and was sent out from the station to investigate the accident." According to the testimony of this policeman, the statement, made by the watchman to him on the evening of the accident, was directly contradictory to the evidence given by the watchman upon the trial of this case.

It sufficiently appears from the foregoing statement of the testimony that there was evidence, tending to prove negligence on the part of the defendant. Accordingly, the case was properly submitted to the jury, and the court committed no error in refusing the peremptory instruction to the jury to find the appellants not guilty.

Appellants, however, contend that although the Appellate Court rendered a judgment, affirming the judgment of the trial court, yet such judgment should not be regarded in this case as a final determination of the facts, even if there was evidence tending to establish appellee's cause of action. The ground of this claim is that, inasmuch as one of the three judges of the Appellate Court was disqualified from acting by reason of his having presided at the trial of the case, and as the two remaining judges disagreed, there was really no decision of the case by the Appellate Court. It is, therefore, contended that the Appellate Court, not having made any decision, this court may pass upon the weight of the evidence, independently of the question as to what the evidence tends to prove.

The general rule is that, where the judgment of the trial court is in favor of the plaintiff and the Appellate Court affirms that judgment, all questions of fact are settled so far as this court is concerned, and we know of no exception to that rule, whether the judgment of affirmance, entered by the Appellate Court, has been entered by a full consideration of the case by all of the judges, or whether it has been entered because of the peculiar state of facts existing here.

But whether the judgment of affirmance here entered was of such a character as would justify this court in passing

upon the weight of the evidence, or not, there is another reason, which precludes this court from taking such a course, even if it were justified in doing so under the peculiar circumstances shown by this record. It appears from the bill of exceptions that the appellants, defendants below, took no exception to the action of the trial court in overruling their motion for a new trial. The record, as made up by the clerk, recites that there was a motion for a new trial, and that it was overruled by the court, and the bill of exceptions also makes a statement to the same effect. But nowhere in the bill of exceptions, or in the record, does it appear that any written reasons for granting a new trial were filed accompanying the motion for a new trial. In *Chicago, Burlington and Quincy Railroad Co.* v. *Haselwood*, 194 Ill. 69, we said (p. 70) : "The question of the sufficiency of the evidence to support the verdict of a jury and the judgment rendered thereon is not open to review, even in courts having jurisdiction to determine that question, unless a motion for a new trial was made, and the motion overruled, and exceptions thereto preserved by a bill of exceptions." In the case at bar, it is recited that there was a motion for a new trial, and that the court denied the same, but no exceptions to such ruling of the court are preserved by a bill of exceptions. Therefore, the sufficiency of the evidence to support the verdict and judgment rendered in this case is not before us for consideration. As far back as the case of *Law* v. *Fletcher*, 84 Ill. 45, we said: "We cannot inquire whether the verdict was unauthorized by the evidence, for the reason that the bill of exceptions fails to show that a motion for new trial was made by appellant and overruled by the court, and proper exception taken thereto by appellant." (See also *Illinois Central Railroad Co.* v. *O'Keefe*, 154 Ill. 508).

*Second*—Appellants also complain that the court below erred in its rulings upon the evidence. If this question were an open one, it cannot be said that the trial court committed any error upon this subject.

A certain physician was put upon the stand, as a witness for appellee, to testify in regard to her injuries, and, upon the cross-examination, appellants attempted to discredit the witness by asking him questions in regard to the professional opinions he had given in other suits, brought to recover damages for personal injuries against one or more of the present appellants. It was also sought by the appellants to show by the direct examination of certain witnesses that the physician in question was interested as a medical man in a large number of personal injury suits against corporations. This class of testimony the trial court refused to admit. Cross-examination upon independent cases of the same character, and about the same time as the principal case, is not allowed. (2 Taylor on Evidence, sec. 1435; *Spenceley* v. *DeWillott,* 7 East, 108). The rule is more strict against the use of this kind of testimony in direct examination. The acts and declarations either of strangers, or of one of the parties to the action in his dealings with strangers, are irrelevant. They are what are denominated *res inter alios actæ.* (1 Taylor on Evidence, sec. 317). There is nothing in the case of *Chicago City Railway Co.* v. *Carroll,* 206 Ill. 318, which is opposed to the view here expressed. In that case it was held to be proper to ask a physician on cross-examination in a personal injury case by whom he was paid, etc. But the testimony, whose introduction is there justified, applies directly to the relation of the witness to the party in interest and to the particular case, and not to his relation with other parties and other cases. It was there said (p. 327) : "It is always competent, on cross-examination, to ask a witness if he is in the employ of a party, or if, at the time he rendered the particular service, he was in the employ of such party, for the purpose of showing his relation to the case and his interest in it, as affecting his credibility and weight of his evidence."

As has already been stated, the appellee and a witness, named Gaffney, testified that, when she approached the Pennsylvania tracks, the east gate was up. This testimony was admitted without objection at the time by the appellants.

At a later stage in the trial, however, the appellants made a motion to exclude the testimony in regard to the east gate being up as being immaterial, and the court refused to grant the motion. It is said that this was error on the part of the trial court. The refusal to exclude the evidence after it was admitted was proper, because appellants introduced testimony themselves for the purpose of contradicting this evidence on the part of the appellee. That is to say, appellants introduced witnesses, whose testimony tends to show that the gates were shut, or down, and that the appellee entered upon the Pennsylvania tracks by passing between the end of the gate, while closed, and the fence post. If the testimony introduced by the appellee had been excluded, such testimony on the part of the appellants would have gone to the jury without any contradiction thereof on the part of the appellee.

But, independently of any of these considerations, the rulings of the trial court in regard to the admission and exclusion of evidence cannot now, and here, be reviewed by this court, for the reason that appellants took no exception to the ruling of the trial court in overruling their motion for new trial. Errors of the trial court in rulings as to the admissibility or exclusion of evidence constitute grounds for a new trial. "It is the duty of litigants to seek this mode of relief in the trial court, and resort to an appeal only in the event the trial judge erroneously refuses to grant a new trial, and such refusal is excepted to, and the exception preserved." (*Chicago, Burlington and Quincy Railroad Co.* v. *Haselwood, supra; Illinois Central Railroad Co.* v. *Johnson,* 191 Ill. 594).

*Third*—The judgment in the present case was against the two appellant companies here appealing. It is said by counsel for the appellants that there was no proof of ownership of the track, upon which the injury occurred, or of the four tracks west of the tower house, by the Chicago and Western Indiana Railroad Company; that, therefore, no liability was shown on the part of that company; that a judgment against two defendants in tort is a unit, and if there be

no evidence against one, and judgment is entered against both, the judgment must be reversed as to both. It is conceded by the appellants that this rule has no application here, if the ownership of the four western tracks by the Western Indiana Railroad Company is shown by the testimony. It is well settled that, "when injury results from the negligence or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable." (*Pennsylvania Co.* v. *Ellett,* 132 Ill. 654; *Chicago and Erie Railroad Co.* v. *Meech,* 163 id. 305; *West Chicago Street Railroad Co.* v. *Horne,* 197 id. 250). In *West Chicago Street Railroad Co.* v. *Horne, supra,* it was held that when an injury results from the negligent operation of a railway, whether by the corporation to which the franchise is granted or its lessee, both the lessor and the lessee are liable to respond in damages.

All the witnesses introduced by the appellee speak of the tracks west of the tower house as being the tracks of the Chicago and Western Indiana Railroad Company. None of the testimony to the effect that this company owned the tracks was objected to, when introduced. It is said by counsel for the appellants that it was mere hearsay testimony, and that no positive proof was introduced as to the ownership of the tracks by the Chicago and Western Indiana Railroad Company. In a case of this kind reputed ownership is sufficient, and such reputed ownership was clearly shown in this case. Here, the plea of not guilty was filed, and, in an action against a railway company for personal injury where the declaration alleges that the defendant company was in possession of the road and operating it, it will be impliedly conceded by the pleadings, not only that the defendant company was a corporation, but also that, at the time of the alleged injury, it was operating the particular line of railroad mentioned in the declaration, and that the operators in charge of the train

being run on said road were its servants and employes. (*Mc-Nulta* v. *Lockridge,* 137 Ill. 270).

We do not understand that the doctrine of the case of *McNulta* v. *Lockridge, supra,* was overruled by the later case of *Chicago City Railway Co.* v. *Carroll, supra.* In the latter case it was distinctly said: "We are clear, however, that where the matter is not made an issue, and is but inducement to the general charge of negligence averred, slight evidence will be sufficient, uncontradicted, to support the allegation." Here, in this case, the declaration averred that the Chicago and Western Indiana Railroad Company, "owned, controlled and operated a certain right of way," etc. This allegation of ownership was mere inducement to the general charge of negligence, and, therefore, the evidence, which was introduced of ownership, even though it may have been slight, was sufficient to support the allegation of the declaration.

It may be said here as was said in *Chicago, Burlington and Quincy Railroad Co.* v. *Warner,* 108 Ill. 538, "no proof is required of facts which everybody is presumed to know." Evidence of common reputation is received in regard to public facts. (1 Greenleaf on Evidence, sec. 128). The Chicago and Western Indiana Railroad Company is a public service corporation, and with its tracks, trains, lessees, employes, running time, depots, etc., is like a highway, or a ferry, to the people of the neighborhood where its tracks are located. Any rule of law, which would force an injured person to make formal proof of ownership in cases like the present, would certainly occasion great inconvenience. (*Peoria and Pekin Union Railway Co.* v. *Clayberg,* 107 Ill. 644; *Chicago, Burlington and Quincy Railroad Co.* v. *Gregory,* 58 id. 272; *Carter* v. *Gunnels,* 67 id. 270; *Central Stock Exchange* v. *Board of Trade,* 196 id. 396).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*