(No. 13506.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. EDWARD BRISLANE, Plaintiff in Error.

*Opinion filed December 21, 1920.*

1. CRIMINAL LAW.—*when denial of motion to continue is not error.* Refusal to grant a second continuance in a murder trial after the defendant has refused to follow his counsel's advice to plead guilty and counsel has been denied leave to withdraw from the case is not error, where it appears that such counsel had made a thorough investigation of the case for nearly two months before advising the plea of guilty and it does not appear that the defendant would have been benefited by further delay. (*North* v. *People,* 139 Ill. 81, distinguished.)

2. SAME—*whether defendant was insane is a question for the jury.* The question of the insanity of the defendant at the time of the commission of the crime is for the jury, and the Supreme Court will not disturb the finding of the jury unless it is palpably against the weight of the evidence.

3. SAME—*extent to which intoxication is a defense to crime.* Intoxication, to amount to a defense to a crime the proof of which requires proof of intent, must be shown to exist to such a degree as to render the accused wholly incapable of forming such intent.

4. SAME—*an instruction in a murder trial need not define term "sound mind."* An instruction authorizing the jury in a murder trial to find the defendant guilty, under circumstances stated, if they believe from the evidence that he was a person of sound mind is not erroneous in failing to define the term "sound mind."

5. SAME—*the defendant is not entitled to have instructions repeated.* It is not error to refuse an instruction offered by the defendant the substance of which is covered by other instructions given at his request.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

FRANK A. McDONNELL, and J. AMBROSE GEARON, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error and Robert G. Carter were indicted for the murder of William Mills on March 11, 1920, in the city of Chicago, were tried in the criminal court of Cook county and found guilty. Carter's punishment was fixed at life imprisonment and plaintiff in error's punishment was fixed at death. Plaintiff in error prosecutes this writ of error to reverse the judgment of the criminal court.

Three errors are assigned. They are: (1) The court refused to grant a continuance on May 6, 1920; (2) the verdict and sentence are not justified by the evidence; (3) the court erred in giving instruction 19 on behalf of the People and in refusing instruction 10 on behalf of the defendants.

Plaintiff in error urges that it was error to refuse the continuance asked for on May 6, 1920. The crime charged was committed on the 11th day of March, 1920. On the 23d day of March the case was called for trial, and on motion of counsel who represented plaintiff in error and the co-defendant, Carter, the cause was continued until May 3. On May 4 present counsel for plaintiff in error appeared and stated to the court that he was employed as Brislane's attorney to represent him on a plea of guilty. Plaintiff in error was thereupon advised by the court that if he pleaded guilty and the evidence warranted the infliction of the extreme penalty the court would not hesitate to inflict such penalty. Thereupon plaintiff in error by his counsel filed a petition for change of venue, which was granted on May 4. On May 5 plaintiff in error's counsel appeared before Hon. Kickham Scanlan, to whom the case had been assigned on change of venue, stating that he had been retained with the understanding that Brislane would plead guilty, and as he now refused to do so counsel asked leave to return the retainer paid by him and withdraw from the case. The court denied the motion and appointed him as counsel to defend plaintiff in error and continued the case until the

following day. Counsel then moved for a further continuance of ten days in which to investigate the case. The court denied the motion. This motion was renewed in writing on the next day, supported by an affidavit of counsel reciting that he did not have time to prepare the defense and investigate the facts and circumstances upon which to establish his defense. His motion was denied and the cause proceeded to trial. The jury by its verdict found plaintiff in error guilty of murder and fixed his penalty at death.

The record shows that Frank A. McDonnell filed his appearance of record as attorney for plaintiff in error on the 22d day of April, 1920. The affidavit of said counsel filed on May 5 shows that he had obtained a transcript of the testimony given at the coroner's inquest; that he had taken a full and complete statement of facts from the defendant on the 22d of April and had obtained a copy of the confession made by Carter, which was also signed as true by plaintiff in error, and investigated testimony implicating plaintiff in error; that he also investigated the conduct of plaintiff in error prior to the commission of the crime for the purpose of establishing the defense of insanity. He states in his affidavit that after this investigation he was convinced that the evidence against the plaintiff in error would establish his guilt beyond a reasonable doubt; also that his investigation as to the defense of insanity demonstrated to him that such a defense could not be established in the case. It is evident that counsel made a thorough investigation of the case, and the fact that on his motion for continuance there was no intimation as to what further investigation was to be made or that witnesses desired could not be had in time for the trial indicates that the defendant received the benefit of all that could be done for him in the case. Further, it will be noted that on motion for a new trial it does not appear that other witnesses could be had who did not appear on the hearing. It is hardly to be presumed that counsel representing a defend-

ant on so serious a charge would advise his client to plead guilty without a thorough investigation on the part of such counsel, and we are of the opinion that such an investigation was made in this case and that no benefit could have come to the defendant by the granting of a further ten days' continuance. One continuance had been had at request of plaintiff in error, and no such showing was made as entitled him to a further continuance.

Counsel cites *North* v. *People,* 139 Ill. 81, as authority for his contention that it was error to refuse to grant a continuance here. That case is to be distinguished from the case at bar for the reason that while there had been a conditional employment of counsel by plaintiff in error and said counsel was afterward appointed to defend him, nothing had been done by him in preparing or investigating the case. In the present case, while counsel for the plaintiff in error sought to withdraw and was afterward appointed to defend, his affidavit shows that he had made an investigation of the case, and it is evident that at the trial the defendant had the benefit of all such investigation. It is the rule that a person charged with crime shall have an opportunity to prepare his defense. We are of the opinion that in this case the rights of the plaintiff in error were not prejudiced by the refusal of the court to grant a further continuance and that the court did not err in so deciding.

In support of the contention that the verdict and sentence in this case are not justified by the evidence, it is argued that the evidence of insanity on the part of plaintiff in error was sufficient to create a reasonable doubt as to his guilt. On behalf of plaintiff in error it was shown that up to March 6, 1920, he was employed as a clerk by the International Harvester Company; that he quit his position on that day and between that time and the time of the killing was intoxicated much of the time. His sister testified that on Saturday, March 6, he came home intoxicated; that he had a little green bottle in his pocket; that

he was vomiting in the bath room; that his hands were
cold; that he was talking to himself; that he kept repeat-
ing, "My God! did I write that book? The whole world
is framing on me!" that he paced up and down the floor;
that he would not eat; that the next day he was brought
home helpless in a taxicab; that his eyes were wild and
staring and froth was running out of his mouth, and he
did not seem to recognize his family and was still talking
to himself in a rambling and disconnected manner; that he
refused to eat; that on Wednesday or Thursday morning
he was brought home about two o'clock A. M. in a help-
less and drunken condition and carried in by the chauffeur;
that he had an odor about him as though he had been drink-
ing alcohol; that he refused to eat. She further testified
that during that week he slept very little and complained
to the members of his family that there were dogs and
other things in his room. His mother suggested calling the
police and having him taken into custody, fearing that he
had delirium tremens. The sister testified that on March 11,
the day of the killing, he came home about 10:30 P. M.,
after the family had gone to bed; that he was in the same
condition; that his mother called a police station on the
telephone, asking them to take him to the hospital on ac-
count of his continued drinking. The testimony of Cath-
erine Robinson, plaintiff in error's mother, was to substan-
tially the same effect. Frank Brooks and Joseph Scholl tes-
tified that they met plaintiff in error about the 8th or 9th
of March and had been with him for some time; that he
was continuously drinking whisky; that he was staggering
and talking in a wild and incoherent manner. Scholl tes-
tified that he saw him on Sunday and on March 6, 7 and 8,
and he stated that at that time he had been drinking con-
tinuously and had a wild and insane look in his eyes. These
witnesses testified that in their opinion Brislane was in-
sane from drink and unable to distinguish right or wrong
or control his actions. Dr. Charles E. Sceleth testified, in

answer to a hypothetical question, that he considered the
defendant was insane at the time of the killing. The rec-
ord in this case shows, however, that not all of the im-
portant facts were included in the hypothetical question put
to the physician to which he answered that the defendant
was insane; that upon cross-examination, when the omit-
ted facts were presented to him, his testimony in that re-
gard was qualified.

As against this testimony, the undisputed facts in the
record show that plaintiff in error had in some manner be-
come involved in debt to his employer in such a way as
to necessitate his return of the money; that he met his co-
defendant, Carter, whom he had known about three years,
and asked him on the day before the shooting how he was
fixed financially, and was told by Carter that he had no
money; that he thereupon asked Carter if he wanted to
make some money, and Carter said he did; that he and
Carter met again on the day of the killing and plaintiff in
error asked Carter if he had a pistol, and Carter said he
had none; that they had lunched together that day and
separated about seven o'clock in the evening with the agree-
ment to meet at eight o'clock on Chicago avenue; that they
walked around until about 10:30 o'clock, got a cab and rode
around a while, and finally stopped at Crawford and Mad-
ison streets, across from the theater on Crawford avenue
where the deceased, William Mills, was employed as man-
ager; that they went to the ticket office of this theater;
that Carter opened the door and plaintiff in error stepped
inside and directed Mills to hold up his hands, and upon
his failing to do so immediately shot Mills in the right
side and caused his death; that thereafter plaintiff in er-
ror and Carter ran across the street and sought to enter the
taxicab they had hired, but as the engine was not running
they abandoned it and ran away from the vicinity, going
to the home of plaintiff in error, where the pistol used in
the shooting was put by plaintiff in error in a drawer of

a closet or cupboard; that after Carter and the plaintiff in error had discussed the best means of getting away they left the house, going down the street separately and meeting later on and secreting themselves in a hotel in the city. The plaintiff in error was positively identified as the person who did the shooting by the witness Bichl, who was standing in the lobby of the theater when the shot was fired and saw the plaintiff in error plainly as he ran away from the theater.

While there is evidence in the record that plaintiff in error had been drinking to excess during several days just preceding the shooting, there is also evidence that the killing was the result of a deliberately planned robbery in order to secure funds to meet the amount due from plaintiff in error to his employer. The question of insanity of plaintiff in error was one for the jury to decide, and this court has many times held that it will not disturb the finding of the jury unless it is so palpably against the weight of the evidence as to indicate that the verdict was based on passion or prejudice. (*People* v. *Karpovich*, 288 Ill. 268; *People* v. *Lutzow*, 240 id. 612; *People* v. *Deluce*, 237 id. 541; *Cronk* v. *People*, 131 id. 56; *Steffy* v. *People*, 130 id. 98.) No evidence tending to prove insanity except that produced by plaintiff in error's voluntary intoxication was produced either by members of the family or by close associates who would be most likely to know of such facts or by medical experts. Whether there was a temporary insanity, produced immediately by intoxication, or a fixed insanity, are questions peculiarly for the jury to determine, and this court should not disturb the verdict except where clearly contrary to the evidence. The rule is, that if plaintiff in error, at the time of the commission of the crime charged, was wholly incapable of forming the intent charged, whether from intoxication or any other causes, he is guilty of no crime. (*Crosby* v. *People*, 137 Ill. 325; *Schwabacher* v. *People*, 165 id. 618; *Bruen* v. *People*, 206 id. 417; *People*

v. *Jones,* 263 id. 564.) The proof does not bring plaintiff in error within this rule, and we are of the opinion that the jury were fully justified in deciding that issue against plaintiff in error.

Plaintiff in error contends that it was error to give the People's 19th instruction. That instruction is as follows:

"The court instructs the jury that if you believe, from the evidence, beyond a reasonable doubt, that the defendant Edward Brislane, at the time of the shooting of Mills was a person of sound mind and if you further find that the said Brislane, when voluntarily intoxicated, committed the homicide charged in the indictment, under such circumstances as would have constituted such an act, by one not intoxicated, murder, then you are instructed that such intoxication would not be any excuse or defense to the act."

It is objected that this instruction did not define soundness of mind and made no other reference to any other instruction for such definition. This objection is without merit. The term "sound mind" is commonly used as synonymous with "sane" as distinguished from "insane," and is itself as plainly descriptive of its meaning as any other definition would be. Moreover, had plaintiff in error desired to have any further definition of this term he should have presented an instruction containing it. There was no obligation on the part of the People, or on the court of its own motion, to present such an instruction. (*People* v. *Meyer,* 289 Ill. 184.) It is also objected that the instruction does not require all findings of fact made by the jury to be found, beyond a reasonable doubt, from the evidence. It is not necessary that in this instruction this language should be repeated, as plaintiff in error insists. A reading of the instruction shows the meaning plainly to be that the jury are to make their findings of fact from the evidence beyond a reasonable doubt. Drunkenness, to amount to a defense to a crime the proof of which requires proof of intent, must be shown to exist to such a

degree as to render the accused wholly incapable of form-ing such intent, and while this instruction was inartificially drawn and does not fully state the rule, the evidence did not approach the requirement of the rule, and we are of the opinion that the jury were not misled by the instruction. We see no error in the giving of this instruction.

The refusal of the court to give the plaintiff in error's 10th instruction is urged as error. That instruction is as follows:

"The jury are instructed that if you believe from the evidence that the shooting alleged had been done by the defendant, Edward Brislane, was done at a time when the defendant, Edward Brislane, was affected by and labored under an attack of a brief or temporary madness or insan-ity, result of and involuntary taking by the defendant of some drug preceding the act, and that he was thereby ren-dered unconscious of what he was doing, that would con-stitute, in law, a complete and entire defense to the whole prosecution and he should under such state of proof be acquitted."

A reading of all the instructions given for the defense shows this instruction to have been completely covered by given instructions. Plaintiff in error is not entitled to have instructions repeated. We find no error on the part of the trial court in refusing to give this instruction.

Plaintiff in error was shown to be guilty beyond any doubt. The record is free from error. The judgment of the criminal court will therefore be affirmed, and the clerk of this court is directed to enter an order fixing the period between nine o'clock A. M. and five o'clock P. M. on the 11th day of February, 1921, as the time when the original sentence of death entered in the criminal court shall be executed. A certified copy of that order will be furnished by the clerk to the sheriff of Cook county.

*Judgment affirmed.*