(No. 40122.—

The People of the State of Illinois, Appellee, *vs.* Richard Raymond Ackerson, Appellant.

*Opinion filed March 29, 1967.*

C. M. GLOSSER, of Rochelle, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and HENRY S. DIXON, State's Attorney, of Dixon, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Richard Raymond Ackerson, was convicted of burglary in a jury trial in Lee County, and sentenced to the penitentiary for a term of not less than 5 nor more than 15 years. He appeals from this conviction, contending that his confession was obtained by constitutionally impermissible means and that the State failed to prove allegations in the "information" beyond a reasonable doubt.

On the night of August 7 or the early morning of August 8, 1965, the Lee County Grain Association located at Lee Center, Lee County, was burglarized. A safe, its contents and some tools used as display items were taken from the office.

At 6:30 P.M., September 28, 1965, the defendant was arrested at his home near Byron, Ogle County, and taken by Lee County sheriff, John Quest, and Ogle County chief deputy sheriff, Edward Lange, to the Ogle County jail in Oregon, arriving there at 7:00 P.M.

The record indicates that upon his arrival at the jail the defendant asked pemission to consult with an attorney. Shortly thereafter he was allowed to use the phone for this purpose. He called his father in Rockford, and requested him to get a lawyer. The father contacted an attorney who declined to see defendant, claiming illness. As a consequence, defendant did not consult with an attorney the remainder of the night nor did he communicate again with anyone.

Throughout the evening hours of the 28th, the defendant was questioned intermittently about the burglary by the sheriff of Ogle County, William Spencer, in the presence of other officers. During this period defendant slept for a short time and was fingerprinted. At about 11:30 or 12:30 P.M. he was taken to a room where Bobby Worley, also arrested in connection with the burglary, was being detained. He was shown a paper on which a number of places that had been burglarized, including the Lee County Grain Association, were listed with the names of the suspected burglars beside each and asked whether the names

beside the locations and the locations of the burglaries were correct. This list had been prepared by the sheriff's office through the use of information gained from William Brickle, who had admitted participation in various burglaries in Lee and Ogle counties, and implicated defendant and others therein. Defendant, after looking over the list, admitted that some of the names and places on the list were correct, evidently including the listing of his name beside the Lee County Grain Association burglary. Subsequent to this oral admission, defendant was placed in a cell about 1:00 A.M. on September 29, 1965.

On the afternoon of the next day defendant spoke with his wife and father at the sheriff's office. After they left, defendant was handed a confession typed by the sheriff whereby defendant admitted the burglary of the grain association and affirmatively waived his right to legal counsel. Defendant read the statement and signed it at approximately 3:40 P.M.

Prior to trial, defendant made a motion to suppress the oral and written confessions, and a hearing was held thereon. Testimony was given by defendant, his wife, his father, Bobby Worley, and all of the police officers who were present during his interrogation. The court denied the motion and ruled that the confessions be admitted into evidence.

At that hearing and at the trial, defendant testified that the police officers did not advise him of his right to remain silent nor that whatever he said might be used against him. He also stated that they threatened to arrest his wife, leaving his four children uncared for, and to set bail beyond his financial ability to post bond if he did not confess. Defendant's wife stated that a policeman told her the defendant would not be admitted to bail unless he confessed. The officers to whom these statements were attributed denied making threats of any kind. Sheriff Spencer and other officers further testified that they advised defendant of his

right to remain silent and to contact an attorney, and that anything he said might be used against him.

William Brickle, who had previously confessed to the grain association burglary and directed police to the site of the stolen safe, testified as to defendant's participation in that burglary on or about the night of August 7. This participation was denied by the defendant, his wife, father, brother and sister, all of whom testified that on the night of and the day following the burglary defendant was in Rockford, 50 miles from the scene of the crime, attending a birthday party for his brother. The jury returned a verdict of guilty and defendant was sentenced thereon.

On appeal defendant contends that his confessions should have been suppressed since they were obtained in violation of his constitutional rights by coercion and intimidation, and by an interrogation conducted after he had requested legal counsel and without the benefit of such counsel.

The trial court determined these questions in a preliminary hearing and found that the confessions were voluntary. On review such determination will not be disturbed unless manifestly against the weight of the evidence, or unless the court has committed an abuse of discretion. (*People* v. *Spencer,* 27 Ill.2d 320.) At the hearing defendant claimed that his oral confession on the night of the 28th resulted from the refusal of the police to let him sleep and their threat to arrest his wife, leaving his children uncared for, and that his written confession of the following afternoon also resulted from the foregoing threat plus the further threat to set his bail beyond his ability to post. The police officers in question denied making any threats and, in addition, pointed out that defendant's written confession was given after consulting with his wife and father and after the latter two had left the sheriff's office. The trial judge, in a written opinion, indicated that he viewed the

confessions as the result of the defendant's learning of his accomplice's confession rather than as the result of illegal police coercion, and ruled that the confessions were voluntary. We see no reason to disturb this ruling.

Defendant relies upon the *Escobedo* (378 U.S. 478, 12 L. Ed. 2d 977,) and *Miranda* (384 U.S. 436, 16 L. Ed. 2d 694,) decisions to support his charge that he was unconstitutionally denied the assistance of counsel. But those decisions are not applicable here. In the instant case the record indicates that defendant was allowed the use of the phone to consult with counsel shortly after his request to do so and on other occasions during his interrogation. He was advised of his right to counsel and to remain silent. However, even if under the facts herein the *Escobedo* rule were applicable, it would not operate to exclude defendant's confessions since we find, from a reading of the record, that he affirmatively waived his constitutional right to assistance of counsel. Immediately prior to his written confession, defendant was asked if he wanted to call a lawyer. He replied, "No, I want to give a statement right now." He then read and signed the confession which had been prepared by the sheriff and which contained the following clause: "I also waive my right of advice of counsel before making this statement."

Constitutional rights, like many others, may be waived so long as the person waiving the right does so "intelligently" and "knowingly". (*Fay* v. *Noia,* 372 U.S. 391, 9 L. Ed. 2d 837.) We think the foregoing circumstances surrounding the defendant's confession sufficiently establish a valid waiver of his right to counsel.

Defendant further contends that the State "failed to prove the allegations in the indictment beyond a reasonable doubt." In support of this contention defendant argues that there is a conflict between the date of the burglary recited in the indictment and the date testified to by Brickle, and that, with regard to that latter date, he established an

alibi, thereby creating a reasonable doubt as to his guilt.

Although there is a conflict between the date named in the indictment and the date testified to by Brickle, it is clear from the entire record that the latter date was correct and that no doubt existed at the trial as to its correctness. Since the time of the burglary was not material to the offense, the erroneous date recited in the indictment is not consequential. (*People* v. *Day,* 404 Ill. 268.) The defendant's "alibi", that at the time of the crime he was somewhere other than the place of the crime, was only one fact before the jury. There was substantial competent evidence, consisting of Brickle's testimony, corroborated by defendant's confessions, to establish defendant's guilt beyond a reasonable doubt. And, as held in *People* v. *Rawls,* 389 Ill. 110, we will not substitute our judgment for that of the trier of facts where the evidence is merely contradictory, including situations where an alibi is offered on behalf of the accused.

The trial court properly held that defendant's confessions were admissible and the evidence presented at the trial clearly established defendant's guilt beyond a reasonable doubt. The judgment of the trial court is affirmed.

*Judgment affirmed.*