THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID LANE, Defendant-Appellant.

(No. 72-166;

Second District—November 8, 1974.

288

Ralph Ruebner and Richard Wilson, both of State Appellate Defender's Office, of Elgin, for appellant.

John H. Maville, State's Attorney, of Belvidere (James W. Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant was found guilty of the murder of his wife in a jury trial and on March 24, 1966, was sentenced to serve 60-75 years in the Illinois penitentiary.

Defendant's notice of appeal from this order was not filed until over 1½ years later, on November 11, 1967. For this reason, his appeal was dismissed. Thereafter on April 2, 1970, defendant filed a post-conviction petition which was dismissed because the same issues were once again before this court as a result of defendant's motion to reinstate his direct appeal.

Defendant's petition before the Illinois Supreme Court for leave to appeal from the dismissal of his post-conviction petition was denied. He then instituted that appeal before this court. On July 11, 1972, we finally allowed defendant's motion to reinstate his direct appeal and consolidated it with his appeal from the dismissal of his post-conviction petition because of the similarity of issues in each appeal. All of the issues presented in defendant's appeals will now be considered.

Defendant has presented seven issues for our determination in his attempt to persuade us to reverse his conviction: First, whether defendant's written inculpatory statement was the product of violations of the principles announced in *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758; and accordingly, if the *Escobedo* principles were followed, was the statement given by defendant voluntary; second, whether the trial judge's examination of defendant's expert psychiatric witness and his rulings with respect to the appropriate tests for the defense of insanity precluded defendant from presenting his defense of insanity; third, whether the State proved defendant's sanity at the time of the murder beyond a reasonable doubt; fourth, whether the alleged prejudicial inflamatory nature of certain photographs introduced into evidence outweighed their probative value; fifth, whether certain closing remarks of the prosecution were improper or prejudicial; sixth, whether it was incumbent upon the trial judge to instruct the jury as to the definition and elements of the offense of murder on his own motion. Finally, whether the instructions which were given to the jury were proper.

There is no dispute as to the basic facts which precipitated defendant's indictment for murder. Defendant and his wife had been having marital problems; a divorce proceeding between them was pending in the spring of 1965. Having consumed a substantial amount of alcohol throughout the day and evening of May 26, 1965, the defendant became determined

to find his wife, Karen, to attempt a reconciliation. When he located her, at approximately 10 P.M. in a rural section of Belvidere, Illinois, she was accompanied by her friend, Vicky Carlson.

While Karen Lane and Vicky Carlson were stopped at a stop sign, defendant approached their vehicle and asked his wife if he could talk to her. She agreed to talk to defendant and he then entered the rear seat of the car which Karen was driving. Karen then drove down a Belvidere rural road. Upon being told by his wife that she was no longer interested in saving their marriage and that she had "found someone else," defendant begin beating her in the head. Consequently the car swerved off the road and hit a utility pole. Vicky Carlson was knocked unconscious; and defendant knocked his wife unconscious with either his fist or a whiskey bottle.

Defendant then walked or ran approximately 1 mile back to his automobile and secured a half-gallon can of gasoline and returned to the car wherein the two young women still lay unconscious. After soaking the car with gasoline, defendant ignited it with a match. As a result, the bodies of the two women were burned beyond recognition.

Thereafter, defendant returned to his car and drove home to Rockford where he resided with his sister. He told his sister what he had done and then directed her to burn his clothing, which she did. The next morning Rockford police officers Prentice and Carr arrested defendant and brought him to the Rockford police station at approximately 9:30 A.M. Upon completion of routine custodial procedure, defendant was interrogated between approximately 12:30 and 1:55 P.M., at which time he signed a written confession relating the facts just mentioned. Defendant was tried and convicted for the murder of his wife only.

Defendant now contends, as he did in his pretrial motion, that the admission into evidence of his written inculpatory statement deprived him of his constitutional rights to counsel. Defendant relies upon *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L.E.2d 977, 84 S.Ct. 1758, in support of this ground for reversing his conviction. Apart from *Escobedo*, defendant further argues that his confession was involuntarily rendered and that its admission into evidence deprived him of due process of law.

■■ Since defendant's trial occurred in January, 1966, the constitutional principles announced in *Escobedo*, as interpreted by our Supreme Court in *People v. Hartgraves* (1964), 31 Ill.2d 375, 202 N.E.2d 33, are dispositive of this issue. In *Hartgraves*, our supreme court interpreted *Escobedo* as holding that if a defendant is not advised of his constitutional right to remain silent, and requests and is denied the assistance of counsel, his subsequent admission is inadmissible as evidence against him. See also

*People v. Heise* (1966), 35 Ill.2d 214, 220 N.E.2d 438; *People v. Mallett* (1970), 45 Ill.2d 388, 259 N.E.2d 241.

At the hearing on defendant's motion to suppress his confession, all of the law officers who were with him from the time of his arrest until he signed the statement testified that defendant never requested to consult with an attorney. Rather, these witnesses consistently stated that upon being advised of his right to consult with an attorney, defendant replied that an attorney would be of no use to him. Furthermore, although the record is unclear as to whether defendant was advised of his right to remain silent prior to his initial interrogation, the record clearly reflects that defendant was so advised prior to making and signing his written statement.

The only evidence in the record that defendant ever requested counsel before signing the confession came from defendant himself. The discrepancy between the testimony of the law officers and defendant presented a factual question which the trial judge could, and did, resolve unfavorably to defendant. Therefore, the *Escobedo* standards are not applicable and do not render the confession inadmissable. *People v. Mallett* (1970), 45 Ill.2d 388, 259 N.E.2d 241; *People v. Ackerson* (1967), 37 Ill.2d 117, 224 N.E.2d 849.

■■ Having determined that the principles recited in *Escobedo* are inapplicable, we next direct our attention to the question of the voluntariness of defendant's confession. (*People v. McGuire* (1966), 35 Ill.2d 219, 220 N.E.2d 447.) Since defendant's trial occurred prior to the decision in *Miranda v. Arizona* (1967), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, the appropriate standard for determining the voluntariness of defendant's confession is the "totality of circumstances" test. (*Haynes v. Washington* (1963), 373 U.S. 503, 10 L.Ed.2d 513, 83 S.Ct. 1336.) Accordingly, an independent examination of the circumstances under which defendant made his confession becomes necessary. *People v. Hester* (1968), 39 Ill.2d 489, 237 N.E.2d 466.

In his attempt to reveal the involuntary nature of his confession, defendant asserts that the law officers who interrogated him utilized psychological coercion. Specifically, defendant contends that he was told that if he did not give and sign a written statement that he would have to view the charred remains of his wife at the Belvidere Hospital. Defendant argues that this "interrogational ploy" precipitated his confession and served only to take advantage of his unstable emotional makeup.

The record in this case includes the report and testimony of the two psychiatrists who thoroughly examined defendant. Essentially, their findings reveal defendant as a frightened and deeply insecure person

with serious characterological impairment and that he was suffering from an incipient schizophrenic process that had not reached psychotic, or severely harmful proportions.

The record, however, also illustrates that defendant was chiefly interrogated during the relatively short period between approximately 12:30 P.M. and 1:55 P.M. at which time defendant signed the written statement. Furthermore, the interrogating Illinois State Police officers, Robert Bales and Robert Wise, testified without impeachment that they never told defendant he would have to view his wife's charred remains if he did not make a confession. It is also noteworthy that the statement which defendant read and signed recited that it was made of his "own free will and accord." (*Cf. People v. Worley* (1967), 37 Ill.2d 439, 227 N.E.2d 746.) In light of the foregoing, the trial judge elected not to believe defendant's version of the circumstances surrounding his interrogation.

Having carefully examined the record, we conclude that defendant's confession was voluntarily given and that the trial judge's finding in this regard is not manifestly contrary to the weight of the evidence. The facts in the record do not reveal any indication of psychological coercion which would warrant a finding that defendant's statement was involuntary. See, *e.g., People v. McGuire* (1966), 35 Ill.2d 219, 220 N.E.2d 447.

Defendant's appellate counsel focused at length on the next issue presented; that the trial judge precluded defendant from effectively presenting his defense of insanity. In this regard defendant argues that the trial judge shed his robe of impartiality and pursued the role of the prosecutor when he briefly questioned defendant's expert witness.

The initial portion of the trial judge's question was made to clarify the period of time during which defendant's expert stated defendant was temporarily insane. Such a course of questioning was permissible in that it clarified a material issue. *People v. Marino* (1953), 414 Ill. 445, 111 N.E.2d 534.

The trial judge continued, however, and questioned defendant's expert as follows:

"The Court: Do you feel that everyone who commits an act of murder is temporarily insane?

The Witness: Although there is considerable debate about that, I personally don't think so.

The Court: You have testified in other cases of murder?

The Witness: I have.

The Court: And on each of those cases, have you testified that the defendant was temporarily insane?

The Witness: No, sir.

The Court: You have, in a number of cases?

The Witness: I can recall one other."

■■ Although it would have been judicially more appropriate for the trial judge to have refrained from this line of questioning, we do not believe that his conduct necessitates reversal of defendant's conviction. The trial judge's line of questioning was not extensive. He accepted each answer given by defendant's psychiatric expert. Defendant does not contend that the trial judge in any way indicated that he did not believe the witness's response to the questions. The trial judge acted fairly and impartially throughout the course of his questioning. We therefore believe that the trial judge did not abuse his discretion by examining defendant's expert. Accordingly, we hold that the trial judge did not depart from his judicial role and did not assume the conduct of the prosecutor. *People v. Green* (1959), 17 Ill.2d 35, 160 N.E.2d 814; *People v. Trefonas* (1956), 9 Ill.2d 92, 136 N.E.2d 817.

The cases cited by defendant (*People v. Finn* (1959), 17 Ill.2d 614, 162 N.E.2d 354; *People v. Santucci* (1962), 24 Ill.2d 93, 180 N.E.2d 491; *People v. Sprinkle* (1963), 27 Ill.2d 398, 189 N.E.2d 295; *People v. Tyner* (1964), 30 Ill.2d 101, 195 N.E.2d 675; *People v. Moriarity* (1966), 33 Ill.2d 606, 213 N.E.2d 516; *Kennedy v. Indiana* (1972), — Ind. —, 280 N.E.2d 611; *Plambeck v. Chicago Railways Co.* (1920), 294 Ill. 302, 128 N.E. 513; and *Chicago & E.I.R.R. Co. v. Schmitz* (1904), 211 Ill. 446, 71 N.E. 1050) in support of this contention are so strikingly inapposite to the present situation that we deem it unnecessary to distinguish them.

The second part of defendant's contention that he was precluded from effectively presenting an insanity defense is that the trial judge erroneously ruled on the appropriate test of insanity. The trial judge would not allow defendant's expert psychiatric witness to respond to the question of whether or not defendant had substantial capacity to appreciate the criminality of his conduct. Over defense counsel's objection, however, the trial judge allowed the State to cross-examine defendant's expert as to whether or not defendant was capable of choosing between right and wrong. However this question was never answered by the witness.

■■ Illinois has long since departed from the right-wrong test. (*People v. Lowhone* (1920), 292 Ill. 32, 126 N.E. 620; S.H.A., ch. 38, § 6—2, Committee Comments (1972).) Any confusion in the minds of the jury, however, that might have resulted from this ruling was clarified in defense counsel's closing argument as well as the instructions to the jury wherein the appropriate test for insanity was properly enunciated.

As his third argument for reversal, defendant contends that the State failed to sustain its burden of proving him sane beyond a reasonable doubt. (*People v. Le May* (1966), 35 Ill.2d 208, 220 N.E.2d 184.) The

basis for this contention lies in the fact that the testimony of the two psychiatrists who testified for the defendant and the State respectively, was conflicting.

Defendant's expert psychiatrist, Dr. J. G. Graybill, testified that defendant was temporarily insane just prior to and during the period of time in which he murdered his wife. Dr. Carl Hamann, the psychiatrist who testified for the State, however, stated that defendant was sane at the time of the murder.

On cross-examination Hamann further stated that at the time of his examinations of defendant, defendant was suffering from an "insipient [sic] schizophrenic process." Hamann also responded that this manifestation could be considered to be a "mental illness."

On the basis of this response by Hamann, together with all of the testimony given by both experts, defendant vigorously argues that his sanity at the time of the murder was not proven beyond a reasonable doubt. After examining the record in this regard with great circumspection, we are not persuaded by defendant's contention.

It has long been settled in Illinois that "[w]hether there was a temporary insanity [on behalf of the defendant], produced immediately by intoxication, or a fixed insanity, are questions peculiarly for the jury to determine * * *." (*People v. Brislane* (1920), 295 Ill. 241, 129 N.E. 185; see also *People v. Wax* (1966), 75 Ill.App.2d 163, 220 N.E.2d 600.) The jury in this case found that the State did sustain its burden in light of all the testimony presented.

Defendant has had no history of prior psychiatric problems. After the argument with his wife he beat her into unconsciousness then walked to his car, obtained the gasoline and returned and burned the two bodies. This was a distance of about 2 miles. It is also to be observed that immediately after the killing, defendant recalled that he intended to stop for a drink, but seeing his bloody condition he stopped at a drive-in restaurant for a cheeseburger and a cup of coffee. He further recalled that this cost him 47 cents. Upon his return home, he washed out his bloody shirt and asked his sister to burn the rest of his bloody clothing. Under the facts of this case, we find that the jury were justified in finding that defendant was not temporarily insane.

■■ Accordingly, we repeat what we stated in *People v. Anderson* (1968), 104 Ill.App.2d 47, 54, 242 N.E.2d 798, 801:

> "The evidence in the sanity issue in the case at bar was in conflict: that with reference to the commission of the offense by the defendant was without conflict. The conflict on the sanity issue gave rise to a factual question which the jury was peculiarly suited to determine, and its findings will not be disturbed unless they are

so manifestly against the weight of the evidence as to indicate that the verdict was based on passion or prejudice. People v. Ford, 39 Ill.2d 318, 321, 235 N.E.2d 576 (1968); People v. Thomas, 409 Ill. 473, 478, 100 N.E.2d 588 (1951)."

Our reading of the record in this case does not cause us to believe that the jury's verdict was the product of passion or prejudice.

Defendant next contends that the trial judge committed reversible error by admitting certain photographs and a color slide into evidence, thus enabling their view by the jury. The pictures and slide were introduced by the State and depict the skull and charred torso of defendant's wife. Defendant argues that these items of evidence had no probative value. Defendant asserts that in light of the fact that the State introduced testimony from five witnesses as to the position and description of his wife's body, the photographs and slide were merely cumulative and prejudicially harmed him.

■■ This contention, however, is disposed of by the established evidentiary principle that where photographs are relevant to establish any fact in issue, they are admissible even though they may be of a gruesome nature. (*People v. Speck* (1968), 41 Ill.2d 177, 242 N.E.2d 208.) During the trial of this case, the photographs and slide illustrated the condition and position of Karen Lane's body as it was found at the scene. As such, these items of evidence served to corroborate the testimony concerning the probable cause of her death. For this reason, it was not erroneous for the trial judge to allow them into evidence. (*People v. Newbury* (1972), 53 Ill.2d 228, 290 N.E.2d 592.) Furthermore, the photos and slide did not become unnecessarily cumulative merely because there was testimony concerning the condition and position of the body as it was found at the scene. *People v. Henenberg* (1973), 55 Ill.2d 5, 302 N.E.2d 27.

■■ Defendant further contends that he was deprived of a fair trial in that he was prejudiced by improper comments of the prosecutor in his closing argument. Defense counsel, however, failed to object at trial to these remarks now complained of; and this omission constitutes a waiver of the right to object on appeal. (*People v. Nuccio* (1973), 54 Ill.2d 39, 294 N.E.2d 276.) The remarks now complained of were in substance the statement of the prosecutor that if the jury believed that the defendant were temporarily insane that it would be equivalent to giving a party a license to kill on that ground. The prosecutor "* * * has a right in his arguments before a jury to dwell upon the evil results of a crime, to urge a fearless administration of the criminal law, and to comment on the conduct of the accused." (*People v. Brown* (1959), 16 Ill.2d 482, 487, 158 N.E.2d 579, 582.) We would further add that the character of these comments was not such as to require us to consider

any effect they might have had on the jury in absence of objection. *People v. Pearson* (1972), 52 Ill.2d 260, 269, 287 N.E.2d 715; *People v. Nuccio* (1973), 54 Ill.2d 39, 49, 294 N.E.2d 276.

Another claim which defendant contends requires reversal of his conviction is that the trial judge failed to, sua sponte, instruct the jury on the definition and elements of the offense of murder. In support of this contention defendant relies upon the oft-cited case of *People v. Davis* (1966), 74 Ill.App.2d 450, 221 N.E.2d 63. Due to the seriousness of the offense here involved we have considered this issue even though the trial judge generally has no duty to give instructions on his own motion where a defendant does not request them (*People v. Carvin* (1960), 20 Ill.2d 32, 169 N.E.2d 260; *People v. Browry* (1972), 8 Ill.App.3d 599, 290 N.E.2d 650), and by failing to request certain instructions, a defendant generally waives review of such omitted instructions on appeal.

It would have been the better approach for the trial judge to furnish the instructions now complained of as being omitted. In light of the record in this case we do not believe that the failure to instruct the jury on the definition and elements of murder was so fundamentally erroneous as to deny defendant a fair trial.

■■ This is so because neither at trial nor at oral argument did defendant's counsel contend that defendant did not, in fact, set fire to the automobile in which his wife lay unconscious. In a case such as this, where the evidence was so overwhelmingly against defendant, had the additional instructions been given to the jury they would still, necessarily, have found defendant guilty. (*Hoge v. People* (1886), 117 Ill. 35, 6 N.E. 796; *People v. Ward* (1965), 32 Ill.2d 253, 204 N.E.2d 741; *People v. Truelock* (1966), 35 Ill.2d 189, 220 N.E.2d 187.) Any error in this regard, therefore, was harmless beyond a reasonable doubt.

Again, because of the severity of defendant's sentence, we have considered defendant's last ground for reversal even though it has not been properly preserved for review. Defendant argues that the instructions that were given to the jury contained numerous defects. Consequently, defendant asserts that he was "effectively deprived of an opportunity to properly present his theory of the case and was thus deprived of a fair trial."

■■ Our examination of the complained of instructions, together with the rest of the instructions which were given, causes us to find that the jury was fairly informed in this case. The instructions considered as a whole fully and fairly recite the law applicable to the theories of the State and the defendant. For this reason we do not agree with defendant's contention in this regard. *People v. Kolep* (1963), 29 Ill.2d 116, 193 N.E.2d 753.

Defendant alternatively contends that his sentence of 60 to 75 years violates the principles of indeterminancy and that his sentence should be reduced. We do not agree. After beating his wife until she was unconscious, he walked a mile to his car, obtained the gasoline, returned, poured the gasoline over her and the other woman with her and then proceeded to burn them alive. The experienced trial judge observed that "* * * it was one of the most vicious murders I have ever tried." The Supreme Court of Illinois has not considered indeterminancy of sentence in vicious murder cases as controlling. In *People v. Sprinkle* (1974), 56 Ill.2d 257, 264, 307 N.E.2d 161, the supreme court approved sentences of 75 to 90 years imposed upon 14- and 15-year-old defendants, stating, "The trial court is normally in a better position during the trial and hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review. [Citations.]" Likewise, in *People v. Allen* (1974), 56 Ill.2d 536, 309 N.E.2d 544, the court approved a sentence of 100 to 200 years for murder; in *People v. Nicholls* (1970), 44 Ill.2d 533, 256 N.E.2d 818, a sentence for murder of 100 to 150 years was approved and in *People v. Walcher* (1969), 42 Ill.2d 159, 246 N.E.2d 256, the supreme court modified the death sentence imposed and reduced the sentence to 40 to 65 years.

■■ Defendant also contends that this cause should be remanded for an evidentiary hearing upon his post-conviction petition. As indicated at the outset of this opinion, the instant appeal is both a direct appeal of his conviction and an appeal of the denial of hearing on the post-conviction petition. Inasmuch as we have considered all of the issues raised, both constitutional and otherwise, we find that the trial court did not err in denying an evidentiary hearing on defendant's post-conviction petition.

For the foregoing reasons the conviction of the defendant is affirmed.

Affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.